Cite as 2024 Ark. App. 558

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-23-657

| | |
|---|---|
| PATRICK ADAM ABLES<br><br>APPELLANT<br><br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** November 13, 2024<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SCR-21-193]<br><br><br>HONORABLE DONNA GALLOWAY, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT SENTENCING ORDER |

**BRANDON J. HARRISON, Chief Judge**

Patrick Ables, who goes by Adam, appeals his conviction after a bench trial for second-degree domestic battery, Ark. Code Ann. § 5-26-304 (Supp. 2023). Adam was charged under subdivision (a)(4), which makes it a Class C felony if a person "knowingly causes physical injury to a family or household member he or she knows to be sixty (60) years of age or older."

Midday on 21 September 2021, Deputy Charles Leech with the Arkansas County Sheriff's Department arrived at an address on Alcorn Gill Road in response to a call about a domestic disturbance. Tim Ables, Adam's father, had a cut near his right ear and another on his right hand. The blood was still wet. Deputy Leech photographed the injuries. According to Deputy Leech, Tim told him that he and Adam had argued. When Tim refused to put money down on a car, Adam threw something that hit his father in the back.

Deputy Leech testified that Tim said he tried to hide in a bedroom, but Adam kicked the door in, grabbed him by his throat, and shoved him into a wall. Adam did not object to this testimony. The State introduced photos of Tim's injuries.

Deputy Leech was the State's second witness; Tim went first. He was not eager to testify against his son:

PROSECUTION: And Mr. Ables, do you — do you remember the events that occurred September 21st of last year?

TIM: I — short term memory [INAUDIBLE] can't remember everything.

PROSECUTION: Do you remember contacting the police or the county, the sheriff's office?

TIM: Uh, yeah.

PROSECUTION: Yes?

TIM: Can I plead the fifth? I just [INAUDIBLE] testify against my son. I just ain't gonna do it.

THE COURT: Mr. Blair.

PROSECUTION: Judge, the Fifth Amendment isn't — he doesn't have a right a right to plead that.

TIM: I drop the charges. I don't know why I don't have a right.

The State went forward. So did Tim, testifying that he was sixty-four years old the day in question, and he called police because he and Adam had disagreed. At one point, Adam threw something. Tim recalled that he received a cut depicted in Deputy Leech's photos when he fell on the floor and hit a box. He did not recall what caused him to fall. He professed not to remember how long it took Deputy Leech to arrive after he called police or what he told the deputy afterward.

2

Tim, however, identified his handwriting and signature on a written statement describing the events. Properly considered, the written narrative was hearsay: it was not given under oath, subject to penalty of perjury, or given at a "trial, hearing, or other proceeding" either. Ark. R. Evid. 801(d)(1); *cf. Matlock v. State*, 2024 Ark. App. 69, 683 S.W.3d 621 (holding that an affidavit a testifying victim submitted with a petition for protective order was not hearsay under that rule). But the State introduced it without objection from Adam. Edited for punctuation and spelling, it reads:

> He got upset because I haven't bought him a new ride. He threw something [and] hit me in the back. I tried to get away into our bedroom. He kicked the door in and grab me by the throat [and] shoved me into the wall then busted my head on the dresser, then threw me down on the floor [and] started kicking me until I finally got up [and] went to my shop.

Tim testified that he did not recall making those allegations. He only agreed that Adam "threw something." He said another allegation—that Adam had thrown him on the floor and kicked him—was false.

On cross-examination, Tim confirmed that he had wanted to invoke his right against self-incrimination because some items in the statement were false. The examination continued:

> DEFENSE COUNSEL: Did [Adam] cause you physical harm that day?
>
> TIM: Not really.
>
> DEFENSE COUNSEL: He did — did he cause you any injury that day?
>
> TIM: No, the box caused the injury. . . . . The box. I had tripped [over] the box.

And then redirect:

> PROSECUTION: You tripped over the box because your son shoved you; correct?

3

| | |
|---|---|
| TIM: | I don't — I can't — I can't uh, I can't swear it because he uh, [witness mumbling under breath].  No, I think I tripped over — |
| PROSECUTION: | Judge, we don't have any further questions[.] |

Apart from testifying to the injuries he saw and authenticating the photos he took, Deputy Leech added nothing to this.  The State rested.  Adam moved for and renewed a motion for directed verdict (after the court denied the first one) without introducing additional proof.

In a challenge to the sufficiency of evidence to convict, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *McCauley v. State*, 2023 Ark. 68, 663 S.W.3d 383.  We will affirm if substantial evidence supports the verdict, meaning evidence that is of a sufficient force and character that it will compel a conclusion without resort to speculation or conjecture.  *E.g.*, *id.*  In a bench trial it's the circuit court's function to evaluate the credibility of witnesses and resolve questions of conflicting testimony and inconsistent evidence, and it's free to believe all, part, or none of any witness's testimony.  *Holmes v. State*, 2019 Ark. App. 384, 586 S.W.3d 183.

Adam's argument, in both the circuit court and on appeal, is that the evidence of guilt was insufficient because Tim was the only witness who could testify how Tim was injured, and he testified Adam did not injure him.  The State concedes that extrinsic evidence of prior inconsistent statements, like Tim's written statement, is admissible for impeachment but not as substantive evidence of the matter asserted.  *Harris v. State*, 36 Ark. App. 120, 819 S.W.2d 30 (1991).  It argues—without citing authority—that Tim's *verbal* statements to Deputy Leech were admissible as substantive evidence.  And it argues there

was nonetheless enough evidence to convict in what Tim both remembered and testified to at trial.

The State overlooks that there is admissible evidence—and then there is *admitted* evidence. All Tim's statements to Deputy Leech, hearsay or not, were admitted without objection. Tim acknowledged that he wrote and executed the written statement the State introduced. And that written statement alone includes sufficient proof that Adam knowingly caused physical injury—the only element Adam targeted in his motion for directed verdict. Hearsay statements a witness admits having made, when introduced without objection, are substantive evidence in the sufficiency analysis. *Johnson v. State*, 298 Ark. 617, 770 S.W.2d 128 (1989); *Ply v. State*, 270 Ark. 554, 606 S.W.2d 556 (1980); *see also Jones v. State*, 332 Ark. 617, 967 S.W.2d 559 (1998) (juvenile transfer determination); *Sanders v. State*, 326 Ark. 415, 932 S.W.2d 315 (1996) (same). If the witness denies the statements were true, the inconsistency is a credibility issue for the finder of fact to resolve. *E.g.*, *Johnson*, *supra*. We therefore hold that the court's judgment was based on sufficient evidence.

Finally, as we noted, Adam was convicted after a bench trial. The 1 March 2023 sentencing order incorrectly indicates he was convicted after a negotiated guilty plea. The circuit court must promptly correct the sentencing order, for the record, on remand.

Affirmed; remanded to correct sentencing order.

GRUBER and THYER, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.